**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DR. JAMES GREENE, | ) | CASE NO. 1:17-cv-02151 |
| | ) | |
| | ) | JUDGE SOLOMON OLIVER, JR. |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| THE METROHEALTH SYSTEM, | ) | |
| | ) | |
| Defendant. | ) | |

---

**TRIAL BRIEF OF PLAINTIFF**
**DR. JAMES GREENE**

---

GARY COOK, ESQ. (#0021240)
Attorney for Plaintiff
23880 Commerce Park, Suite 2
Beachwood, Ohio 44122
216.965.4410
gcookesq@yahoo.com

# TABLE OF CONTENTS

**PAGES**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    iii

STATEMENT OF MATERIAL FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

LAW AND ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    xx

      A.     The Plaintiff will set forth competent, credible evidence to
               establish race discrimination pursuant to Chapter 4112
               of the Ohio Revised Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    xx

      B.     The Plaintiff will set forth competent, credible evidence to
               establish race discrimination pursuant to 42 U.S.C.
               Section 2000(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    xx

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    xx

# TABLE OF AUTHORITIES

**CASES**                                                                      **PAGES**

Alexander v. Ohio State Univ. Coll. of Social Work, 429 Fed.Appx. 481

  (6th Cir. 2011)........................................................................................x

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).............................................x

Barrett v. Lucent Techs., Inc., 36 Fed.Appx. 835 (6th Cir. 2002).............................x

Barrett v. Whirlpool Corp., 556 F.3d 502 (6th Cir. 2009).........................................x

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ........................................................x

Clark v. City of Dublin, Ohio, 178 Fed.Appx. 522 (6th Cir. 2006)...........................x

Dixon v. Gonzales, 481 F.3d 324 (6th Cir. 2007).......................................................x

Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344 (6th Cir. 1998) ..............x

Genaro v. Cent. Transp., 84 Ohio St.3d 293 (1999) ....................................................x

Hall v. Ohio State Univ. College of Humanities, 10th Dist. No. 11AP-1068,

  2012-Ohio-5036........................................................................................x

Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993) ....................................................x

Kuriatnyk v. Township of Bazetta. Ohio, 93 Fed.Appx. 683 (6th Cir. 2004) ............x

Kyle-Eiland v. Neff, 408 Fed.Appx. 933 (6th Cir. 2011).........................................x

Little Forest Med. Ctr. v. Ohio Civ. Rights Comm. (1991), 61 Ohio St. 3d 607 ......x

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) ......................................x

Murray v. Thistledown Racing Club, Inc., 770 F.2d 63 (6th Cir. 1985) ...................x

Nguyen v. City of Cleveland, 229 F.3d 559 (6th Cir. 2000) ......................................x

Noble v. Brinker Int'l, Inc., 391 F.3d 715 (6th Cir. 2004).........................................x

Penny v. UPS, 128 F.3d 408 (6th Cir. 1997) ................................................x

Ragheb v. Blue Cross and Blue Shield of Michigan, 467 F.Supp. 94

 (E.D. Mich. 1979) ................................................................................x

Rorrer v. City of Stow, 743 F.3d 1025 (6th Cir. 2014)................................x

Sessin v. Thistledown Racetrack, LLD, 187 F.Supp.3d 869 (N.D. Ohio 2016)........x

Smith v. Chrysler Corp., 155 F.3d 799 (6th Cir. 1998) ...............................x

Upshaw v. Ford Motor Co., 576 F.3d 576 (6th Cir. 2009) ..........................x

White v. Baxter Healthcare Corp., 533 F.3d 381 (6th Cir. 2008)...............x

Winston v. Lear-Siegler, Inc., 558 F.2d 1266 (6th  Cir. 1977)....................x

Younis v. Pinnacle Airlines, Inc., 610 F.3d 359 (6th Cir. 2010) ...............x

**STATUTES**                                                    **PAGES**

42 U.S.C. § 2000e-2 .....................................................................x

O.A.C. 4715-5-04 .........................................................................x

O.A.C. 4715-13 .............................................................................x

O.R.C. 4112.02 .............................................................................x

O.R.C. 4112.08 .............................................................................x

# I.     STATEMENT OF MATERIAL FACTS.

The Plaintiff filed a Complaint against the Defendant alleging four counts; to wit: (1) Racial Discrimination through disparate treatment, disparate impact, and wrongful discharge in violation of Ohio Revised Code Chapter 4112; (2) Unlawful Retaliation and Racial Discrimination in violation of Ohio Revised Code Chapter 4112; (3) Racial Discrimination in violation of 42 U.S.C. Section 2000(e); and (4) Racial Discrimination in violation of 42 U.S.C. Section 1981. On March 22, 2019, the Court granted the Defendant's Motion for Summary Judgment only as to Count II (retaliation under Ohio Revised Code Section 4112) and Count IV (discrimination pursuant to Section 1981). The Plaintiff's Racial Discrimination Claims pursuant to Ohio Revised Code Chapter 4112 (Count One) and 42 U.S.C. Section 2000(e) (Count Three) remain pending before this Court.

Plaintiff James Greene, D.D.S. (hereinafter referred to as the "Plaintiff") is a licensed doctor of dental surgery by the State of Ohio. The Plaintiff is black/African American and of African descent, which is a protected class under federal and Ohio law.  The Defendant should admit these facts.

The Plaintiff was employed by the Defendant in its Department of Oral Health & Dentistry; which is a hospital established and operated pursuant to Ohio Revised Code Section 339, provides medical care in Cuyahoga County, and employs more than 500 persons in Ohio. The Plaintiff also engaged in private practice, known to and approved by the Defendant, through James G. Greene, D.D.S., Inc.  The Plaintiff performed all said services and duties within the County of Cuyahoga, State of Ohio. The Defendant should also admit these facts.

The Plaintiff has been a greater Cleveland dentistry practitioner for approximately 60 years. He has practiced dentistry for approximately 38 continuous years with Dr. James Greene, DDS, Inc.

On or about June 10, 2013, the Plaintiff and the Defendant entered into an agreement of employment. Both parties had the full understanding that the Plaintiff had and would continue his preexisting private dental practice.

The Defendant claims that in 2014, the Defendant "uncovered irregularities" in the Dental Department, which led to an indictment of Dr. Edward Hill, the Defendant's then-interim President/CEO and Chair of the Dentistry Department, and three other dentists, relative to allegedly diverting hospital patients to their own private practices. However, at no time whatsoever was the Plaintiff alleged to be involved in or indicted for any "irregularities", crimes or otherwise. The Defendant attempts to lead the Court to an inference that somehow the Plaintiff was involved therein; however, he was not and there has never been an allegation to the contrary. That investigation and resulting criminal indictments are mere red herrings.

On January 1, 2015, the Defendant assigned Dr. Henry Young as the interim Chair of the Dentistry Department. Pursuant to and in full compliance with the request of Dr. Young to request an updated approval form with respect to secondary employment, the Plaintiff submitted the required and requested form and information. The original form was submitted on February 27, 2017 and re-completed and submitted the form on April 14, 2015 identifying his continued secondary employment with James G. Greene D.D.S., Inc., at the 11900 Shaker Boulevard address. The form was approved by Dr. Young on April 20, 2015. The Plaintiff later moved his practice further from the hospital to 13922 Cedar Road in University Heights.

On or about May 10, 2016, the Plaintiff was informed through Bernard R. Boulanger, M.D. and Mr. Daniel K. Lewis for the Defendant that he could no longer work as faculty of the Defendant and maintain his private practice. The Defendant should admit that it authorized the notification to cease his private practice if he wished to maintain his employment with the Defendant.

The Defendant has falsely claimed that the Plaintiff's private practice "conflicted" with the Defendant's policies and not in the "best interests" of the Defendant. However, the reality is that similarly situated "white" employees were not given such ultimatum and were able to continue their similar private practices. The Defendant has admitted that other dentists, including Dr. Roger Karp, Dr. Nicholas Hammermeister, Dr. James Kozik, Dr. William Nemeth, Dr. Waleed El Mallah, and Dr. Mircea Olteanu, were not required to cease their separate private practices to continue working for the Defendant.

The Plaintiff was legally required to maintain his private practice to avoid abandonment of patients, malpractice, and liability. Notwithstanding his legal and professional obligation and right to maintain his private practice while working for the Defendant, the Defendant terminated the employment of the Plaintiff on or about July 29, 2016.

The Defendant terminated the Plaintiff on or about July 29, 2016, which was an adverse employment action according to law. The Defendant has admitted that the Plaintiff provided quality dental services for the patients of the Defendant. The Plaintiff maintained an exemplary record as a dental professional, and mentor to interns and residents.

Notwithstanding, in 2016, the Defendant unfairly created, initiated, and implemented, policies and practices of racial discrimination and disparate treatment of black professionals. In addition to the Plaintiff, for example, Dr. Henry Young, an African-American and who was a

longtime director of the Department, was unceremoniously stripped of his title and position. In fact, the Plaintiff protested this unfair treatment of Dr. Young. After the Plaintiff protested the discriminatory and disparate treatment of Dr. Young, the Defendant released an unknown "study" that claimed that the Plaintiff's private practice was somehow incompatible with his employment with the Defendant. There were no known complaints from the Defendant regarding the existence and effect of the Plaintiff's private practice prior to 2016. As a direct and proximate result, the Plaintiff suffered compensatory damages, emotional distress, future lost wages, benefits, and other damages.

The Defendant never mentioned any "study" until the Plaintiff challenged the Defendant's selective targeting of him and other African American professionals. The Defendant's "investigation: and "study" were mere pretexts. The Defendant's claims that the Plaintiff's "failure to be forthcoming about his secondary practice" and of an alleged one-year-prior warning are false and fabricated. The new location of the Plaintiff's private practice, a pretext given for the alleged conflict, is no closer to the Defendant's "competing" location than the prior location of his private practice. The Defendant targeted and retaliated against the Plaintiff for protesting discriminatory conduct by the Defendant including, but not limited to, the discriminatory conduct toward and actions against Dr. Henry Young.

The Defendant's defense rests essentially on the testimony of Laura McBride, an employee of the Defendant. Ms. McBride self-servingly claims that the Defendant looked only at "whether the secondary employment posed a threat of competition based on proximity" to the Defendant's dental locations, the amount of hours that the dentists worked for the Defendant in comparison to their secondary employment, and the nature of the dental services provided by each dentist. The pretextual conclusion by Ms. McBride and the Defendant that the Plaintiff's

long-standing, well-known private practice "posed the opportunity for competition" and "potential conflict of interest" was and remains unfounded and without any supporting evidence whatsoever.

There was no difference in these factors between the Plaintiff's prior well-established private practice location and his new location, which was further from the hospital. Ms. McBride admits that the 11900 Shaker Boulevard location was known to the Defendant. The discriminatory, retaliatory, and disparate treatment of the Plaintiff is corroborated by the deposition testimony of other employees of the Defendant. For example, Dr. Bernard Boulanger, Daniel K. Lewis, and Emily Fiftal all provided corroborating evidence.

Dr. Bernard Boulanger has been the Executive Vice President and Chief Clinical Officer of MetroHealth since March, 2016. Dr. Boulanger leads the clinical operations of the MetroHealth System, including the dental department, working with the Chief Operating Officer thereof.

Dr. Boulanger and Mr. Lewis met with the Plaintiff on May 10, 2016 about the Plaintiff's employment. Dr. Boulanger testified that the purpose of the meeting was to look at the "secondary employment" of the Plaintiff. He attempted to couch the meeting as part of a "process" for "all" dentists, but he could not recall any other meeting with any other MetroHealth dentist. The Plaintiff was the only practitioner whose office Dr. Boulanger visited in the whole dental department, despite the thin claim that all dentists were being reviewed.

Also, despite the guise of a simple process to "look" at the secondary employment of the Plaintiff, Dr. Boulanger had previously admitted that he and Mr. Lewis went into the meeting with the position that the Plaintiff's secondary employment was "unacceptable". The logical implication is that the secondary employment was "acceptable" at some point, just no longer,

which was a clear pretext to terminating the Plaintiff's employment for discriminatory, retaliatory, and disparate reasons.

Dr. Boulanger previously testified that the "review" included three criteria to evaluate secondary employment. The alleged criteria were (1) "geographical location"; (2) FTE commitment relative to the amount of time that a dentist would spend working at MetroHealth; and (3) the specialty of the dental provider..

According to Dr. Boulanger, the geographic location related to "conflict of interest" and "competition" of secondary employment relative to the proximity to MetroHealth dental care locations. Dr. Boulanger was aware of the Plaintiff's secondary employment prior to the inception of the inquisition.

Dr. Boulanger further previously admitted that the Plaintiff executed a standard MetroHealth secondary employment approval request form, dated April 14, 2015. The form clearly and unequivocally informed, disclosed, and requested secondary employment, known as James G. Greene, DDS, Inc., at his 11900 Shaker Boulevard location. The request for secondary employment at that location was approved by Dr. Henry Young, who was authorized to do so. Dr. Boulanger was unaware that the Plaintiff from the practice from the Shaker Boulevard location to Cedar Road, which was farther away from the relevant MetroHealth Lee-Harvard location.

Interestingly, Dr. Boulanger told the Plaintiff at the May, 2016 meeting that he had to choose between full-time employment with the Defendant or his private practice, as if the two were mutually exclusive. The alleged proximity of locations was actually not important to the Defendant, but instead the Defendant purposely forced an ultimatum upon the Plaintiff which the Plaintiff could not comply for ethical, professional, and business reasons. Again, Dr. Boulanger

could he recall any other dentist given this ultimatum. The May 10, 2016 was a Tuesday meeting and the Plaintiff was given until that Thursday (just 2 days) to make a life-altering decision.

Dr. Boulanger further previously conceded that other dentists' employment by the Defendant also have private practices in Cuyahoga County. For example, Dr. Roger Karp and Dr. Hammermeister have practices in Cuyahoga County. However, none of these dentists were given the "choice" of becoming full-time employees of MetroHealth or having a private practice, regardless of the location.

Daniel K. Lewis, the Executive in Residence for Dr. Akram Boutros, the CEO of the Defendant, further supports a finding of racial discrimination, retaliation, and disparate treatment. Mr. Lewis met with the Plaintiff and Dr. Boulanger at the May 10, 2016 hearing. Mr. Lewis confirmed that the Defendant had a policy that "secondary employment" had to be disclosed and approved.

The crux of the concern, according to Mr. Lewis, was the proximity of the Plaintiff's private practice to the MetroHealth location. However, like Dr. Boulanger, Mr. Lewis admitted that other dentists maintained secondary employment (to wit: private practices) at locations near MetroHealth locations including, but not necessarily limited to, Dr. Karp, Dr. Hammermeister, Dr. Nemeth, Dr. Alsouss, and others. Mr. Lewis, again like Dr. Boulanger, admitted that despite all the other private practices, only the Plaintiff was confronted. Mr. Lewis admitted that the Defendant had no knowledge or evidence of the Plaintiff extracting or poaching patients from the Defendant to his private practice.

As a similar enforcer of the Defendant's policies regarding secondary employment, Mr. Lewis, as with Dr. Boulanger, could not cite or point to a single policy which required the ultimatum against the Plaintiff. Mr. Lewis had no evidence or facts to suggest that the Plaintiff

changed his private practice from the point of his initial employment with the Defendant to the ultimatum given on May 10, 2016. Mr. Lewis had no evidence or facts to suggest that the Plaintiff violated the Defendant's supposed disclosure policy regarding secondary employment and private practices.

Mr. Lewis confirmed the authenticity of the secondary employment approval form, dated April 14, 2015, completed by the Plaintiff. Again, the employer is listed at James G. Greene, DDS, Inc. with a location in Cuyahoga County. Mr. Lewis confirmed that the disclosure and request was approved by Dr. Henry Young, who had the authority to do so. The Plaintiff's secondary employment with James G. Greene, DDS, Inc. at a location in Cuyahoga County was known and approved by the management of the Defendant. .

Emily Fiftal, the Director of Employee and Labor Relations for the Defendant, equally confirmed and/or failed to dispute the Plaintiff's claims of racial discrimination, retaliatory actions, and disparate treatment. Ms. Fiftal, also a lawyer, is in charge of the Human Resources Department handling employee-related matters and union relations.

Ms. Fiftal became involved with the subject matter herein when the Defendant's legal department received letters alleging discrimination. The Defendant maintained an Equal Employment Opportunity policy which, at least on paper, "prohibits any type of discrimination", including race. Although Ms. Fiftal stated that she found no discrimination against the Plaintiff surrounding the "secondary employment" rouse, she admitted that she spoke only with Dr. Boulanger, Mr. Lewis, and Laura McBride, all employees of the Defendant involved in the ultimatum forced by the Plaintiff.

Ms. Fiftal admitted that they found secondary employment of part-time employees, such as Dr. Karp, Dr. Nemeth, Dr. Kozik, and Dr. Hammermeister, in Cuyahoga County appropriate,

despite similarities with the Plaintiff. Another white general dentist, Dr. Mircea Olteanu, was also approved for secondary employment with no ultimatum despite said practice being in Broadview Heights, Cuyahoga County, even closer to the MetroHealth location. All of those doctors are Caucasian and maintained secondary employment. All were employment by the Defendant in the dental department and all had secondary employment. Ms. Fiftal admitted that the Plaintiff, who was given the ultimatum, is black and those doctors not given the ultimatum are white. Ms. Fiftal learned of no specific conflicts of interest against the Plaintiff or any patient poaching by the Plaintiff.

Ms. Fiftal also confirmed the prior disclosure and approval of the Plaintiff's secondary employment with Dr. James Greene, DDS, Inc., first at 11900 Shaker Boulevard and then a location on Cedar Road further from any MetroHealth location. The request was approved by Dr. Young, who had authority to do so.

The Plaintiff suffered adverse employment action despite his qualifications and the lack of any undue conflicting private practice clients, particularly compared to non-African American dental professionals. The Plaintiff was also treated less favorably than similarly situated non-African American dental professionals. The Defendant failed to take the necessary actions to eliminate racial discrimination, disparate treatment, and/or retaliation in accordance with Chapter 4112 of the Ohio Revised Code, and Section 703 of Title VII of the Civil Rights Act of 1964.

## II. <u>LAW AND ARGUMENT.</u>

It is undisputed that the Plaintiff is African-American which is a protected class, that the Defendant is an employer bound by federal and Ohio discrimination and related employment laws, the Plaintiff was an employee of the Defendant, that the Plaintiff was an exemplary

employee provided professional dental services to patients of the Defendant, and that the Defendant terminated the employment of the Plaintiff. The only apparent dispute by the Defendant is the reasons for the ultimatum to cease his private practice and its otherwise discriminatory, disparate, and retaliatory actions against the Plaintiff resulting in his termination of employment. Notwithstanding, competent, credible, and sufficient evidence will establish the Defendant's discriminatory, disparate, and retaliatory actions against the Plaintiff and the wrongful discharge of the Plaintiff in violation of federal and Ohio law as well as public policy.

A.     **The Plaintiff will set forth competent, credible evidence to establish race discrimination pursuant to 42 U.S.C. Section 2000(e).**

The Plaintiff's Racial Discrimination Claim pursuant to 42 U.S.C. Section 2000(e) (Count Three) is an issue/cause of action for trial. This claim alleges that the Defendant engaged in the disparate treatment of the Plaintiff and other illegal employment discrimination. The evidence will unequivocally show that the Plaintiff, an employee, was treated differently than other employees of the Defendant who were similarly situation and the difference was based upon on a protected characteristic; to wit: race.

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against any individual because of such individual's race, color, religion, sex, or national origin. Younis v. Pinnacle Airlines, Inc., 610 F.3d 359, 363 (6th Cir.2010). Specifically, 42 U.S.C. §2000e-2(a)(1) mandates that it is an unlawful employment practice for an employer ". . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin". 42 U.S.C. § 2000e-2(a)(1). In similar situations, employers cannot deprive or tend to deprive any individual of

employment opportunities or otherwise adversely affect his status as an employee.  42 U.S.C. § 2000e-2(a)(2).

Section 1981 prohibits racial discrimination in the "making, performance, modification, and termination of contracts and employment conditions.  The Sixth Circuit has recognized that the same framework used to evaluate a Title VII discrimination claim applies to discrimination claims under 42 U.S.C. §1981.  <u>Noble v. Brinker Int'l, Inc.</u>, 391 F.3d 715, 720 (6th Cir. 2004).

A plaintiff who lacks direct evidence of racial discrimination may make a *prima facie* discrimination claim. To demonstrate a prima facie case of discrimination based on race, a plaintiff must show that:  (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees.  <u>Id</u>.; <u>Alexander v. Ohio State Univ. Coll. of Social Work</u>, 429 Fed.Appx. 481, 487 (6th Cir. 2011).  There is absolutely no dispute, as shown above, that the Plaintiff was a member of a protected class (to wit:  African American), that the Plaintiff was subject to an adverse employment decision (to wit:  the ultimatum), and that he was qualified for the position.  Thus, the first three of four elements are unequivocally undisputed and undisputable.

The Defendant appears to only dispute the fourth element; to wit:  that the Plaintiff was treated differently than similarly-situated, non-protected employees.  A plaintiff in a discrimination lawsuit may pursue two theories of employment discrimination: disparate treatment and disparate impact.  <u>Hall v. Ohio State Univ. College of Humanities</u>, 10th Dist. No. 11AP-1068, 2012-Ohio-5036, ¶14; <u>Hazen Paper Co. v. Biggins</u>, 507 U.S. 604, 609 (1993).  In "disparate treatment" claims the employer treats some people less favorably than others because of their race, color, or other protected characteristics.  <u>Id</u>.  Liability depends upon whether the

protected trait actually motivated the employer's decision.  Id.  Disparate impact discrimination involves employment practices that are facially neutral in their treatment of different groups but fall more harshly on one group.  Id.

Ms McBride's previous attempt to distinguish the overwhelming approval of secondary employment for the Caucasian dentists also fails. Ms. McBride clearly manipulates these dentists' "factors" to reach the conclusion that their close in proximity and/or similar practices would not be potential competition or conflicts of interest.  (Dr. Karp had secondary employment in closer proximity to the Defendant than the Plaintiff, but his practice was deemed acceptable. Dr. Hammermeister and Dr. Kozik were relatively close, albeit further than the Plaintiff's private practice.  Dr. Nemeth (8 miles) and Dr. Olteanu (7 miles) also maintained relatively close in proximity private practices.  The purported distinguishing factors, even if such carried any weight of relevant, are unsupported by any competent, credible evidence by either the Defendant or Ms. McBride.

Ms. McBride also failed to distinguish similarly situated "white" dentists by claiming that they had specialties which overrode all other considerations.  For example, Ms. McBride admitted that Dr. Karp had a private practice in close proximity and worked a considerable percentage of his time for the Defendant, but his "specialty of periodontics" negated those negative factors.  Aside from the Defendant's failure to provide proof thereof, the Defendant appears to have violated Ohio law regarding specialties including Ohio Administrative Code Section 4715-5-04 which mandates specific requirements and licensing for specialty designations.  Chapter 4715-13 of the Ohio Administrative Code also sets forth detailed specialty designation requirements and guidelines. The Defendant's attempted specialty justification to

render the Plaintiff and "white" dentists not forced to forgo their private practices "not similarly situated" fails.

The Defendant identifies two other dentists who allegedly received similar ultimatums; to wit: Dr. Manal Sunna and Dr. Waleed ElMallah. The Defendant and Ms. McBride both point out that these two dentists are designated as "white". Emily Fiftal noted in her Investigation Report that "white" includes "[a] person having origins in any of the original peoples of Europe, the Middle East, or North Africa". Both Dr. Sunna and Dr. ElMallah are of Middle Eastern descent, not of descent similar to those dentists allowed to maintain similarly situated secondary employments and/or private practices.

**B.** **The Plaintiff will set forth competent, credible evidence to establish race discrimination pursuant to Chapter 4112 of the Ohio Revised Code.**

The Plaintiff's Racial Discrimination Claim pursuant to Ohio Revised Code Chapter 4112 (Count One) is also an issue/cause of action to be addressed at trial. This claim also alleges that the Defendant engaged in the disparate treatment of the Plaintiff and other illegal employment discrimination. The evidence will unequivocally show that the Plaintiff, an employee, was treated differently than other employees of the Defendant who were similarly situation and the difference was based upon on a protected characteristic; to wit: race.

Ohio Revised Code Section 4112.02 provides that "[i]t shall be an unlawful discriminatory practice: (A) [f]or any employer, because of the race, color, religion, sex, national origin, handicap, age, or ancestry of any person, . . . to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment". Section 4112.08 mandates that Chapter 4112 shall be

construed liberally for the accomplishment of its purposes. <u>Genaro v. Cent. Transp</u>., 84 Ohio St.3d 293, 296 (1999). In Ohio, federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) *et seq*., is generally applicable to cases involving alleged violations of Chapter 4112. <u>Little Forest Med. Ctr. v. Ohio Civ. Rights Comm</u>. (1991), 61 Ohio St. 3d 607.

A plaintiff meets the burden of establishing discrimination by presenting direct evidence of discriminatory actions by the defendant or showing the existence of circumstantial evidence that creates an inference of discrimination. <u>Upshaw v. Ford Motor Co.</u>, 576 F.3d 576, 584 (6th Cir. 2009). Direct evidence is evidence that, if believed, dictates a finding, with no need to draw inferences, that "unlawful discrimination was at least a motivating factor in the employer's actions". <u>Barrett</u>, 556 F.3d at 515. Circumstantial evidence is "proof that does not on its face establish discriminatory animus, but does allow a fact-finder to draw a reasonable inference that discrimination occurred". <u>Kyle-Eiland v. Neff</u>, 408 Fed.Appx. 933, 939 (6th Cir. 2011).

When a plaintiff relies on circumstantial evidence, the burden-shifting framework applies as set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). The burden is first on the plaintiff to demonstrate a *prima facie* case of race discrimination; it then shifts to the employer to offer a legitimate, non-discriminatory explanation for its actions; finally, the burden shifts back to the plaintiff to show pretext; to wit: that the employer's explanation was fabricated to conceal an illegal motive. <u>Id</u>.

Pretext may be established either directly by showing that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. <u>White v. Baxter Healthcare Corp.</u>, 533 F.3d 381, 392 (6th Cir. 2008). A plaintiff can demonstrate "pretext" by showing that the employer's stated reason for the adverse employment action either (1) has no basis in fact; (2) was not the actual reason; or (3) is

insufficient to explain the employer's action.  Id. at 393.  A plaintiff may also demonstrate pretext by offering evidence which challenges the reasonableness of the employer's decision ". . . to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation".  Id. at 393.

The evidence is clear that the Defendant favored Caucasian employees who were similarly situated to the Plaintiff. Such comparisons need not be perfect.  Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 351-52 (6th Cir. 1998).  Instead, a plaintiff must prove only that his employment situation was, in all "relevant aspects," "nearly identical" to those of white coworkers who received more favorable treatment. Id. Courts may make "independent determinations" as to the value of particular comparisons and should not insist on exact correlations between allegedly disfavored and favored employees.  Id. at 352. Based upon the evidence to be proffered by the Plaintiff, the burden will be upon the Defendant to produce a legitimate, nondiscriminatory reason for the adverse employment action taken against the Plaintiff.  The Defendant will fail to do so.

In the instant matter, the Defendant's purported non-discriminatory reasons are weak, implausible, inconsistent, and contradictory.  The Sixth Circuit has adopted an approach that for an employer to avoid a finding that its claimed nondiscriminatory reason was pretextual, ". . . the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made".  Smith v. Chrysler Corp., 155 F.3d 799, 806-07 (6th Cir. 1998).  In the instant matter, the Defendant did not make a reasonably informed and considered decision before taking adverse actions against the Plaintiff.  The Defendant forced the termination of the Plaintiff's employment because ceasing his private practice would have

created ethical, professional, and even greater economic problems. The Defendant's ultimatum was strong-arm tactics, not the presentation of viable, realistic alternatives.

The evidence also establishes the requirement "that the employer treated employees who were similarly situated, but not members of the protected group, more favorably". See, e.g., Murray v. Thistledown Racing Club, Inc., 770 F.2d 63, 67 (6th Cir. 1985). Courts cannot blindly accept the employer's proffered reason as honest and conflicting evidence should not be resolved summarily. Smith, 155 F.3d at 807-08. The Defendant's "choice" was disingenuous and based upon racial discrimination, not a balanced business formula measuring fair competition.

Even assuming *arguendo* that the purported review and analysis of the secondary employment of Caucasian dentists were conducted in concert and in parity with the "review and analysis" leading to the ultimatum forced upon the Plaintiff, which the Plaintiff disputes, it is clear that the Defendant strained to find exception to the similar factors so that the "white" doctors could remain employees of the Defendant and maintain private practices, while the Defendant could not. The Defendant has falsely claimed that "objective, non-discriminatory factors" were utilized in determining that the Plaintiff must leave its employment given the untenable, unviable ultimatum to cease his long-standing, well-known, and respected private practice.

### III.  CONCLUSION.

The Plaintiff will establish his burden of proof with competent, credible evidence relative to his claims of Racial Discrimination Claims pursuant to Ohio Revised Code Chapter 4112 (Count One) and 42 U.S.C. Section 2000(e) (Count Three). The Defendant will fail to met any burden of proof required of it in defense of the Plaintiff's claims.

Respectfully submitted,


 /s/ Gary Cook, Esq.           
GARY COOK, ESQ. (#0021240)
Attorney for Plaintiff
23880 Commerce Park, Suite 2
Beachwood, Ohio 44122
216.965.4410
gcookesq@yahoo.com




<u>CERTIFICATE OF SERVICE</u>

        The undersigned hereby certifies that the foregoing was electronically filed this ____ day of July, 2019.  Electronic notice of filing will be sent to all counsel of record by operation of the Court's electronic filing system, CM/ECF system based upon consent to electronic service. Parties may access this filing through the Court's System.


 /s/ Gary Cook, Esq.           
GARY COOK, ESQ. (#0021240)
Attorney for Plaintiff