IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DR. JAMES GREENE,<br><br>      Plaintiff,<br><br>- v. -<br><br>THE METROHEALTH SYSTEM,<br><br>      Defendant. | Civil Case No. 1:17-cv-2151<br><br>JUDGE SOLOMON OLIVER, JR. |

*DEFENDANT THE METROHEALTH SYSTEM'S TRIAL BRIEF*

## INTRODUCTION

Following the discovery of significant concerns in its Department of Oral Health and Dentistry (the "Dentistry Department"), Defendant The MetroHealth System ("MetroHealth") conducted an analysis of its dentists' secondary employment. MetroHealth determined that Plaintiff's secondary employment – along with that of two other dentists outside of his protected class – were not in the best interest of MetroHealth and posed potential conflicts of interest. MetroHealth provided Plaintiff with the opportunity to continue his employment at MetroHealth by ceasing his conflicting secondary employment. Plaintiff chose instead to continue his secondary employment. Plaintiff's race and national origin had nothing to do with his separation from employment. He has no evidence to the contrary.

## SYNOPSIS OF FACTS

In 2013, Plaintiff began working as a dentist at MetroHealth's Lee-Harvard Health Center. When he started at MetroHealth, Plaintiff also continued working for his private practice, which was then located at 11900 Shaker Boulevard.

In 2014, MetroHealth uncovered irregularities in its Dentistry Department and notified law enforcement of its concerns. MetroHealth refrained from conducting an internal investigation during the pendency of the law enforcement investigation, to avoid interfering with or compromising that investigation.

Eventually, Dr. Edward Hills (MetroHealth's former Chief Operating Officer, interim President/CEO, and Chair of the Dentistry Department) and three other dentists formerly employed by MetroHealth were convicted and received lengthy jail sentences for fraud, bribery, and conspiracy crimes relating to various activities, including improperly diverting MetroHealth patients to their private practices. See United States v. Hills, N.D. Ohio Case No. 1:16-CR-329.

In late 2015, after separating from employment with MetroHealth, Dr. Hills approached

Plaintiff about joining a business venture called Innovative Dental. In February 2016, Plaintiff joined Dr. Hills' business venture and began practicing secondary employment at Innovative Dental. Plaintiff did not notify MetroHealth of this change, as is required by MetroHealth's secondary employment policy.

In the spring of 2016, MetroHealth undertook an extensive review of the Dentistry Department. As a result, MetroHealth determined that secondary employment posed potential conflicts of interest within the Dentistry Department. Thus, MetroHealth conducted an analysis of all secondary employment held by dentists in the Dentistry Department in order to determine whether any such employment presented a conflict or was contrary to MetroHealth's interests.

In assessing the dentists' secondary employment, MetroHealth considered objective, non-discriminatory factors including: (1) whether the dentists' secondary employment posed a threat of competition based on proximity to MetroHealth's dental locations; (2) the amount of hours the dentists worked at MetroHealth as compared to their secondary employment; and (3) whether the dentists provided specialty services.

As a result of this review, MetroHealth determined that the secondary employment of three dentists – Plaintiff, Dr. Sunna, and Dr. ElMallah (both of whom self-reported their ethnicity as being white) – presented a significant opportunity for competition and potential conflicts of interests, and therefore was unacceptable. Notably, Plaintiff, Dr. Sunna, and Dr. ElMallah were among the four dentists with secondary employment in the closest proximity of MetroHealth's dental locations. The other dentist with secondary employment in the closest proximity, Dr. Karp, specialized in periodontics and had a very limited time commitment at MetroHealth, unlike Plaintiff, Dr. Sunna, and Dr. ElMallah.

Accordingly, MetroHealth notified Plaintiff, Dr. Sunna, and Dr. ElMallah that their

secondary employment was unacceptable and would need to cease in order to continue their employment at MetroHealth. Dr. Sunna decided to continue her private practice and resigned from MetroHealth. As for Dr. ElMallah, he agreed to discontinue his conflicting secondary employment located in Cuyahoga County and only continue his secondary employment outside of Cuyahoga County.

On May 10, 2016, Dr. Bernard Boulanger and Daniel Lewis met with Plaintiff. They notified Plaintiff of MetroHealth's determination that his secondary employment was incompatible with his employment at MetroHealth, and that he would need to cease his secondary employment if he wished to continue working at MetroHealth. Dr. Boulanger and Mr. Lewis hoped that Plaintiff would choose to continue his employment with MetroHealth. Plaintiff, however, elected to continue his private practice.

Shortly thereafter, Plaintiff, through his attorney, raised an internal complaint at MetroHealth alleging that the choice presented to him with respect to his secondary employment was motivated by his race and age. MetroHealth initiated an investigation into Plaintiff's complaints and found no evidence of discrimination. At the conclusion of the investigation, MetroHealth completed an investigation report detailing its findings, which it provided to Plaintiff. On July 28, 2016, following the conclusion of the investigation, Plaintiff's employment ended pursuant to his decision not to cease his secondary employment. Plaintiff's race and national origin did not play any role is his separation from MetroHealth.

## LAW AND ARGUMENT

While Plaintiff brings race and national origin discrimination[1] claims pursuant to

---

[1] With respect to his national origin claims, Plaintiff does not allege that he was discriminated against on account of being from a specific country. Rather, Plaintiff generally refers to his national origin as being "of African descent." However, "'[n]ational origin' refers to the country of birth, or the country from which a person's ancestors came."

Title VII[2] and Ohio Rev. Code Chapter 4112, the analysis of these claims is essentially the same. See Moore v. Cuyahoga Cty., No. 1:16 cv 3068, 2017 U.S. Dist. LEXIS 152070, *21 (N.D. Ohio Jul. 27, 2017) ("The Sixth Circuit has recognized that the framework used to evaluate a Title VII discrimination claim also applies to discrimination claims under . . . O.R.C. § 4112.02.").

Plaintiff has previously admitted to this Court that he has no direct evidence of discrimination. *See* Doc. #: 20-1, PageID #: 337("Admittedly, there is no direct evidence of racial discrimination in the instant matter."). In the absence of direct evidence of discrimination, Plaintiff must prove his case circumstantially through the familiar *McDonnell Douglas* burden-shifting framework. Singfield v. Akron Metro Housing Auth., 389 F.3d 555, 561 (6th Cir. 2004). To establish a prima facie case of discrimination, Plaintiff must prove he: (1) was a member of a protected class; (2) suffered an adverse employment action; (3) was qualified for his position; and (4) that similarly-situated employees outside his protected class were treated more favorably. Simpson v. Vanderbilt Univ., No. 16-5381, 2017 U.S. App. LEXIS 9066, at *7 (6th Cir. May 22, 2017).

If Plaintiff establishes his prima facie case, the burden shifts to MetroHealth to articulate a legitimate, non-discriminatory reason for Plaintiff's separation. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981). Then, the burden shifts back to Plaintiff, who "must overcome the explanation by offering evidence that would allow a reasonable jury to conclude that the defendant's explanation was a pretext for unlawful discrimination." Roschival v. Hurley Med. Ctr., No. 16-1722, 2017 U.S. App. LEXIS 11034, *13 (6th Cir. Jun. 19, 2017).

---

Douglas v. Eaton Corp., 577 Fed. Appx. 520, 526 (6th Cir. 2014) (quoting Norbuta v. Loctite Corp., 1 Fed. Appx. 305, 312 (6th Cir. 2001)).
[2] In his EEOC Charge, Plaintiff only identified "race" as the basis of his charge. Accordingly, Plaintiff failed to exhaust his administrative remedies to the extent that he now attempts to raise a Title VII claim based upon his national origin Granderson v. Univ. of Mich., 211 Fed. App'x 398, 400 (6th Cir. 2006) (dismissing Title VII claim for failure to exhaust administrative remedies).

MetroHealth has presented a legitimate, non-discriminatory reason for Plaintiff's separation from employment. Specifically, after conducting the department wide analysis of secondary employment, MetroHealth determined that Plaintiff's secondary employment was unacceptable as it posed the potential for competition and conflicts of interest with MetroHealth's business. MetroHealth provided Plaintiff with the choice to either continue his private practice or continue his employment with MetroHealth. Plaintiff chose to continue his private practice, and, as a result, his employment with MetroHealth ended. Plaintiff has not presented any evidence to rebut the legitimacy of this reason for his separation.

In order to meet his burden of showing pretext, Plaintiff must prove, by a preponderance of the evidence, that MetroHealth's stated reason "lacks a basis in fact, did not actually motivate the discharge, or was insufficient to motivate the discharge." Voltz v. Erie County, 25 F. Supp. 3d 1046, 1052 (6th Cir. 2014). Plaintiff cannot do so, as his claims are premised merely upon his subjective feeling and perception that he was treated unfairly when MetroHealth presented him with the choice regarding his secondary employment. "Plaintiff cannot merely express a different opinion of, or a naked suspicion about the basis for Defendants' decision to terminate his employment." Robinson v. City of Cleveland, No. 1:16CV1455, 2017 U.S. Dist. LEXIS 170724, *14 (N.D. Ohio Oct. 13, 2017). However, that is exactly what Plaintiff attempts to do in this case.

In addition, further cutting against any argument Plaintiff may raise regarding pretext is the fact that MetroHealth also found the secondary employment of Dr. Sunna and Dr. ElMallah, both of whom are outside Plaintiff's protected class, to be unacceptable. Plaintiff admits he has no evidence to contest this.

Even if Plaintiff could show that the stated reason was pretextual, which he cannot, his claims still would fail because he cannot show that discrimination was the real reason for his separation. "[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993).

## ANTICIPATED EVIDENTIARY ISSUES

As set forth in MetroHealth's Motions *in Limine*, MetroHealth anticipates that the following evidentiary issues will arise at trial: (1) that Plaintiff will attempt to re-litigate his now-dismissed retaliation claim; (2) that Plaintiff will attempt to allege discrimination or offer "me too" arguments regarding Dr. Henry Young; (3) that Plaintiff will attempt to request, raise arguments, or introduce evidence in support of punitive damages, despite the unavailability of such damages against MetroHealth; (5) the Plaintiff will attempt to will attempt to request, raise arguments, or introduce evidence in support of emotional distress damages, despite his prior representations and testimony that he is not seeking such damages; and (6) that Plaintiff will attempt to present irrelevant evidence regarding MetroHealth's financial condition. As set forth in MetroHealth's Motions *in Limine*, the Court should preclude Plaintiff from raising arguments or offering evidence on these issues.

## CONCLUSION

For the above reasons and as will be further demonstrated at trial, MetroHealth did not discriminate against Plaintiff, and Plaintiff's claims have no merit.

Respectfully submitted,

*s/ David P. Frantz*
Jon M. Dileno (Ohio Bar No. 0040836)
 jmd@zrlaw.com
David P. Frantz (Ohio Bar No. 0091352)
 dpf@zrlaw.com

-6-

>ZASHIN & RICH CO., L.P.A.
>950 Main Ave., 4th Floor
>Cleveland, Ohio 44113
>Tel.: (216) 696-4441
>Fax: (216) 696-1618
>
>*Attorneys for Defendant The MetroHealth System*

### CERTIFICATE OF SERVICE

I certify that on July 23, 2019, the foregoing was filed electronically. All parties and counsel will receive service of this filing through the Court's electronic filing system and may access the filing through the Court's system.

>*s/ David P. Frantz*
>Jon M. Dileno (Ohio Bar No. 0040836)
>  jmd@zrlaw.com
>David P. Frantz (Ohio Bar No. 0091352)
>  dpf@zrlaw.com
>ZASHIN & RICH CO., L.P.A.
>950 Main Ave., 4th Floor
>Cleveland, Ohio 44113
>Tel.: (216) 696-4441
>Fax: (216) 696-1618
>
>*Attorneys for Defendant*

-7-